IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN R. WHITTINGTON; AND
WHITTCO, INC., Individually and on
behalf of Others Similarly Situated,

Plaintiff,

vs.                                                  Civ. No.  13-1167 JCH/WPL

CHIEF JUSTICE PETRA JIMENEZ MAES;
JUSTICE EDWARD L. CHAVEZ;
JUSTICE CHARLES W. DANIELS;
JUSTICE BARBARA J. VIGIL; and
JUSTICE RICHARD C. BOSSON, in their
Official Capacities as Members of the
NEW MEXICO SUPREME COURT; and
ARTHUR W. PEPIN, in his Official Capacity
as Director of the NEW MEXICO ADMINISTRATIVE
OFFICE OF THE COURTS,

Defendants.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion to Dismiss* [Doc. 12], in which Defendants argue that each of Plaintiffs' claims fails to state a claim upon which relief can be granted. After reviewing the complaint, as well as the motion, response, and reply, the Court concludes that the motion should be granted.

## BACKGROUND

Plaintiff Stephen Whittington is a resident of Clovis, New Mexico and is President and majority stockholder of a New Mexico corporation, Plaintiff Whittco, Inc. In their *Class Action Complaint for Declaratory and Injunctive Relief* [Doc. 1], Plaintiffs—as civil litigants in the

State of New Mexico's Tenth Judicial District Court—challenge the requirement that they pay fees for the electronic filing of documents in that court.

Plaintiffs allege that in 2007, the New Mexico Administrative Office of the Courts ("AOC") entered into a contract with Tyler Technologies, Inc. ("Tyler") to provide electronic case management software in all of the New Mexico state courts.  In 2007, according to the complaint, the software provided internal case management capabilities but did not provide for parties to electronically file documents in cases. Subsequently, electronic filing capabilities were added for certain types of litigants as further explained below. Plaintiffs allege that under the terms of the AOC's contract with Tyler, Tyler receives $3.70 of the $6.00 fee for each electronic filing and $3.70 out of each $4.00 fee for electronic service; the remaining balance of each filing and service fee is paid to the AOC.

In 2009, the New Mexico Legislature enacted NMSA 1978, § 34-1-11, which created an electronic services fund and authorized the Defendants to "establish by rule reasonable electronic services fees to cover the expense of providing electronic services to the public." As a result the Defendants, who are Justices of the New Mexico Supreme Court, adopted Rule 1-005.2 NMRA regarding electronic filing and service of pleadings and other case documents. Rule 1-005.2 imposes a mandatory fee of $6.00 per electronic filing of a document in a case and an optional $4.00 if the filing party wishes to have the document served electronically. Otherwise, litigants may avoid the $4.00 fee by serving their documents as otherwise permitted by the New Mexico Rules of Civil Procedure.

Rule 1-005.2 does not apply to all litigants in New Mexico courts. Rather, it makes electronic filing mandatory (and thus, the associated filing fees mandatory) for all parties represented by attorneys in all civil cases in district courts, with the exception of civil cases

relating to domestic relations, domestic violence, sealed cases, habeas corpus, or proceedings under the Children's Code. It does not apply to pro se civil litigants or to civil litigants in metropolitan court or magistrate court. Because these litigants do not use the electronic filing system, they pay no electronic filing fee. Further, under Rule 1-005.2(M), an attorney may file a petition requesting an exemption, for good cause shown, from the mandatory electronic filing fees.

Plaintiffs assert that they represent a class that consists of "all civil litigants in the district courts of New Mexico who are represented by attorneys and are required to pay filing fees under Tule 1-005.2." They assert the following federal claims: violation of the First Amendment right to free speech and freedom of association (Count I), violation of the Fourteenth Amendment right of access to the courts (Count II), and violation of the Fourteenth Amendment right to equal protection of the law (Count III). Plaintiffs also assert several claims under state law, including violation of the equal taxation provisions of the New Mexico constitution (Count IV), violation of the separation of powers provision of the New Mexico constitution (Count V), and violation of Article VI, Section 30 of the New Mexico constitution (Count VI). Plaintiffs ask for declaratory judgment and a permanent injunction.

## LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Fed. Civ. P. 12(b)(6), the Court must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. Civ. P. 8(a). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007), the Court must review the complaint to determine whether it " 'contains enough facts to state a claim to relief that is plausible on its face.' " *Ridge at Red Hawk, L.L.C. v. Schneider*, 493

F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation and internal quotation marks omitted). The Court must accept all well-pleaded factual allegations of the complaint as true. *McDonald v. Kinder–Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at 1974) (internal citations and footnote omitted). Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. *See also Ridge at Red Hawk*, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.") (emphases in original). For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1248.

Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*.

## DISCUSSION

### I.   FREEDOM OF SPEECH AND ASSOCIATION, AND RIGHT TO AN ATTORNEY

Plaintiffs argue that the filing fees imposed by Rule 1-005.2 unconstitutionally burdens their First Amendment right to hire an attorney, a right that is part of the freedom of speech and assembly. *See* Doc. 15 at 4. According to Plaintiffs, the electronic filing fees are an improper tax on their exercise of that right because only litigants who are represented by counsel must pay them. *Id*. at 5-6. While Defendants do not dispute the existence of the right to hire an attorney, they argue that the electronic filing fees at issue in this case are not a tax and therefore do not improperly burden Plaintiffs' rights to counsel. For the reasons set forth below, the Court agrees with Defendants.

In support of their argument that the electronic filing fees impinge on their First Amendment rights, Plaintiffs rely upon two cases analyzing the First Amendment right to freedom of the press. The first, *Minneapolis Star and Tribune Co. v. Minn. Comm'r of Rev.*, 460 U.S. 575 (1983), involved a "use tax" imposed on the cost of paper and ink products used in the printing of newspapers. The state exempted the first $100,000 spent on paper and ink by any given publisher in a tax year. *Id*. at 578.  As a result, many smaller publishers paid no tax at all, while more than half of the total tax collected was paid by the publisher of the Star Tribune. *Id*. at 578-79, 591. After analyzing the use tax in the context of Minnesota's greater tax code, the Court first concluded that Minnesota had improperly "singled out the press for special treatment." *Id*. at 582. While economic regulation of the press is permissible when falls under the

same general regulation applied to all businesses, a tax burden on First Amendment rights "cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Id*. at 582-83. Such protection of the press is consistent with "the basic assumption of our political system that the press will often serve as an important restraint on government." *Id*. at 585. In *Minneapolis Star and Tribune*, the Court concluded that the State's main interest in the tax—the raising of revenue—could not justify the special treatment of the press because there were alternative means of achieving the same interest. *Id*. at 586-88. Second, the Court found that the tax violated the First Amendment because it targeted only a small group of newspaper publishers, thereby presenting "such a potential for abuse that no interest suggested by Minnesota can justify the scheme." *Id*. at 592.

It was this second type of improper discrimination against a small group within the press that was at issue in *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987), another case upon which Plaintiffs rely. In *Ragland*, the issue was whether Arkansas' sales tax scheme taxing general interest magazines but exempting newspapers and religious, professional, trade, and sports journals violates the First Amendment's guarantee of freedom of the press.  *Id*. at 223. Because the imposition of the tax depended on the magazine's content, the Court labeled the selective tax as "particularly repugnant to First Amendment principles." *Id*. at 229. Finally, the Court concluded that the State could not meet its heavy burden to defend its content-based approach to taxing magazines by citing its interest in raising revenue, encouraging "fledgling publishers," and "fostering communication" in Arkansas. *Id*. at 231-32.

Plaintiffs argue that the State's imposition of an electronic filing fee only on litigants who retain counsel is "indistinguishable" from the taxes described in *Minneapolis Star and Tribune* and *Ragland*, and therefore improperly burdens their First Amendment right to retain counsel.

However, in those cases there was no dispute that the impropriety stemmed from the taxation of a First Amendment right of expression. Here, the government action at issue is not a tax, but a fee charged for a service. The distinction is an important one. The Tenth Circuit has stated that "every burden which the state imposes upon its citizens with the view of revenue for support of its government or any of its political subdivisions, is levied under the power of taxation, whether under the name of a tax or some other designation," and "the constitutional test is always whether anything is given or offered for that which is taken." *Morton Salt Co. v. City of South Hutchinson*, 159 F.2d 897, 901-02 (10th Cir. 1947). Further, a tax generates general revenue for the taxing entity. *See Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 621 (1981). On the other hand, a user fee is "a specific charge imposed by the State for the use of state-owned or state-provided transportation or other facilities and services." *Id.*

Here, Plaintiffs have been charged a fee for the service of filing court documents through the State's electronic case management system. Thus, the State has provided them a service for which they have been charged a fee. As a result, the electronic filing fee is not a tax and the rationales set forth in *Minneapolis Star and Tribune* and *Ragland* are not applicable.

Furthermore, Plaintiffs have not alleged in their complaint how their right to retain counsel has been infringed. Plaintiffs have not alleged, for example, that they or any other litigant have been forced to proceed *pro se* because the electronic filing fee was prohibitively expensive. Similarly, Plaintiffs have not alleged that they or any other litigant has forced to proceed pro se because their application for an exemption from Rule 1-005.2 was denied. If Plaintiffs have retained counsel, their right to do so has not been impinged. Accordingly, the Court concludes that Plaintiffs' claim for violation of their First Amendment rights of free association and counsel should be dismissed in accordance with Rule 12(b)(6).

## II.    RIGHT OF ACCESS TO THE COURTS

Plaintiffs argue that the electronic filing fees improperly burden their constitutional right of access to the courts. Although they acknowledge that filing fees are appropriate in some circumstances, *see* Doc. 15 at 9, they contend that the taxation analysis set forth in *Minneapolis Star and Tribune* applies with equal force to the Fourteenth Amendment's due process clause right to access to the court, and thereby renders the fees unconstitutional. The Court disagrees.

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has described "access to the courts" as a "fundamental constitutional right." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Accordingly, states must, for example, provide transcripts to indigent criminal defendants for appeals as of right. *Griffin v. Illinois*, 351 U.S. 12 (1956). However, the Supreme Court has not always found filing fees with no indigence waiver to be unconstitutional. Although filing fees must be waived for indigent litigants filing for divorce, *Boddie v. Connecticut*, 401 U.S. 371 (1971), they need not be in filing for bankruptcy, *United States v. Kras*, 409 U.S. 434 (1973), or in seeking judicial review of a denial of welfare benefits. *Ortwein v. Schwab*, 410 U.S. 656 (1973). The Supreme Court has drawn these distinctions on the basis of the nature of the right affected and the availability of avenues of redress outside the courts. For example, the issue in *Boddie* was the legal dissolution of marriage—a matter in which a judicial proceeding in state court is the exclusive and "only effective means of resolving the dispute at hand." 401 U.S. at 376. In light of the "basic importance" of the marital relationship and the exclusivity of the remedy in a court of law, the Supreme Court in *Boddie* held that under principles of due process, impoverished litigants could not be barred from filing for divorce based upon their inability to pay court filing fees. *Id*. at 380-

81. However, the Supreme Court found in *Kras* that similar rights did not attach to a petitioner in bankruptcy. In that case, the Court upheld the rule requiring the prepayment of filing fees by an indigent bankruptcy petitioner, concluding that his "interest in the elimination of his debt burden, and in obtaining his desired new start in life, although important and so recognized by the enactment of the Bankruptcy Act, does not rise to the same constitutional level" as the intimate marriage relationship. 409 U.S. at 445. The Court observed that the government's control over the establishment, enforcement, and dissolution of debts is not nearly "so exclusive as Connecticut's control over the marriage relationship in *Boddie*" because "a debtor, in theory, and often in actuality, may adjust his debts by negotiated agreement with his creditors." *Id*. Similarly, in *Ortwein* the Supreme Court held that the Oregon appellate filing fee, as applied to indigents seeking to appeal an adverse welfare decision, does not violate the due process or equal protection clause of the Fourteenth Amendment. 410 U.S. at 661. The Court found no suspect classification, such as race, nationality, or alienage, to apply to the fee-paying appellants. *Id*. at 660. As a result, the applicable standard was whether the state was able to provide a rational justification for its rule. *Id*. That requirement was met because "the Oregon court system incurs operating costs, and the fee produces some small revenue to assist in offsetting those expenses." *Id*.

These decisions from the Supreme Court demonstrate that the nature of the underlying case and the rights adjudicated are important factors in analyzing an "access to the courts" claim. In this case, Plaintiffs have not alleged the nature of the civil dispute they are litigating in the state's Tenth Judicial District Court. What is clear is that the case is not one involving divorce and domestic relations, domestic violence, habeas corpus, or children's court rules. *See* Rule 1-005.2(B)(1). Also, because the case is in district court, not magistrate court, at least $10,000 is at

issue. *See* NMSA 1978, § 35-3-3(A).  Beyond this, there is nothing in the Complaint to indicate the nature of the rights being litigated in Plaintiffs' case. Furthermore, there is nothing to suggest that Plaintiffs were subjected to the electronic filing fee due to membership in a suspect class such as race, nationality, or alienage. Thus, a rational basis test applies here.

Defendants have shown a rational basis for the electronic filing fees to which Plaintiffs object. First, Defendants point out that the electronic filing fees are used to help defray the costs of making an electronic filing system available to litigants; thus, only the litigants who use the system should be required to pay for it. With regard to not requiring pro se litigants to file electronically, Defendants have pointed out that in many procedural matters, courts traditionally have given greater leeway to pro se litigants because they are generally not repeat players in the system and are less familiar with technical requirements than are lawyers, whose job it is to acquire such expertise. Doc. 12 at 5. Defendants point out that litigants in family court (where cases involving domestic relations, domestic violence, or proceedings under the Children's Code) are generally litigated, are not generally brought to recover money damages. The same is true of habeas cases. However, most civil litigation in state district court involves the recovery of damages. Here, the Court concludes that it is rational for Defendants to require litigants, most of whom are seeking to validate economic interests, to bear the costs incurred by the State in administering the e-filing system. Doc. 12 at 6. Finally, the Court finds there is a rational basis in the Defendants' decision not to require litigants in magistrate and metropolitan courts to file electronically (and pay the associated fees) because the amounts of money at issue in those cases is less than in cases filed in district court. *Id*. *See* NMSA 1978, § 35-3-3(A) (granting jurisdiction to magistrate judges in civil actions in which the debt or sum claimed does not exceed $10,000).

Finally, Plaintiffs have not alleged that they, or anyone else, was actually denied access to the courts because of an inability to pay the electronic filing fees. When a litigant is able to supply the necessary funds to access the court, he cannot claim that he was denied access to the courts by fees that were too high. *See Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). In order to successfully assert a claim that he was denied access to the court, a plaintiff must plead facts to show that his right of access was actually hindered. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."). Failing to allege the denial of access to the court, Plaintiffs' claim should be dismissed for failure to state a claim.

## III.      RIGHT TO EQUAL PROTECTION

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981). However, the court must apply a heightened burden of strict scrutiny where the government categorizes persons based upon a suspect classification such as race or national origin, or where the classification burdens the exercise of a

11

fundamental constitutional right. *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1210-11 (10th Cir. 2002).

Plaintiffs argue that the electronic filing fees are unconstitutional because they must be paid only by litigants in state district court who are represented by counsel and whose cases are not in the areas of domestic relations, domestic violence, habeas corpus, or governed by the Children's Code. In contrast, litigants in magistrate or metropolitan courts, as well as litigants in district court who are pro se or whose cases fall under the aforementioned categories, are permitted to file documents in the traditional manner and thereby escape the filing fees. Although Plaintiffs acknowledge that this distinction does not involve suspect classifications, they contend that it does burden fundamental rights—to wit, the right to retain counsel and the right of access to the court—such that Rule 1-005.2 must be subjected to strict scrutiny.[1] Doc. 15 at 10.

Plaintiffs' argument is foreclosed by the Supreme Court's decision in *Kras*, 409 U.S. at 446. In that case, the Court concluded that the rational basis standard applied in an equal protection challenge to rules requiring indigent bankruptcy applicants to pay filing fees. The court reasoned that bankruptcy "is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental." *Id*. In this case, as in *Kras*, there is no indication that the subject matter of the litigation in which Plaintiffs are engaged touches upon any fundamental right. Because the rule Plaintiffs challenge also does not touch upon race, nationality, or alienage, there is no need to require anything other than a rational justification for the challenged rule.

---

[1] The Court does not reach the issue of whether Plaintiffs are similarly situated to other litigants who are exempted from the electronic filing fee. As discussed below, the Court concludes that the Defendants have provided the requisite rational basis for the rule, thereby precluding the need for the Court to determine whether Plaintiffs are similarly situated.

As already explained above, Defendants have stated a rational basis for not requiring pro se litigants or litigants in particular types of cases to file electronically and thereby incur electronic filing fees. Accordingly, Plaintiffs' equal protection claim should be dismissed as well.

## IV.    STATE LAW CLAIMS

This Court has supplemental jurisdiction over Plaintiffs' state law claims in accordance with 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiffs' federal claims. However, in accordance with 28 U.S.C. § 1367(c)(1), the Court declines to exercise that supplemental jurisdiction in this case because Plaintiffs' state law claims raise novel and complex issues of New Mexico law that are best left to the New Mexico courts.

**IT IS THEREFORE ORDERED** that *Defendants' Motion to Dismiss* [Doc. 12] is **GRANTED**, and all of Plaintiffs' federal claims (Counts I, II, and III) are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. The Court declines to exercise supplemental jurisdiction over the state law claims (Counts IV, V, VI), and those claims are also **DISMISSED WITHOUT PREJUDICE**.

_____
**UNITED STATES DISTRICT JUDGE**